IN THE DISTRICT COURT OF OKLAHOMA COUNTY
STATE OF OKLAHOMA

CJ-2020-1844

FILED IN DISTRICT COURT
OKLAHOMA COUNTY

| | | |
|---|---|---|
| 1.  SYLVIA ROXANNE HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | APR 1 4 2020 |
| v. | ) | CJ-20- |
| | ) | RICK WARREN |
| 1.  COMPCHOICE, LLC, | ) | COURT CLERK |
| | ) | 50 |
| Defendant. | ) | JURY TRIAL DEMANDED |
| | ) | ATTORNEY LIEN CLAIMED |

## PETITION

COMES NOW the Plaintiff, Sylvia Roxanne Harris, and for her Petition in the above-entitled action, alleges and states as follows:

## PARTIES

1.      Plaintiff, Sylvia Roxanne Harris ("Plaintiff"), is an adult female residing in Oklahoma County, Oklahoma.

2.      Defendant is CompChoice, LLC ("Defendant"), an entity doing business in and around Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3.      This action arises out of Plaintiff's former employment with Defendant and is based on the following claims: (a) age discrimination and retaliation in violation of the Oklahoma Discrimination in Employment Act (25 O.S. §1101, et seq.) ("ODEA") and Age Discrimination in Employment Act ("ADEA"); (b) disability discrimination and retaliation in violation of the ODEA, Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA"); and (c) gender discrimination and retaliation in violation of the ODEA and Title VII of the Civil Rights Act of 1964 ("Title VII").

-1-

**EXHIBIT 1**

4.   All acts complained of herein occurred in and around Oklahoma County and Defendant is located and doing business in such county and may be served in that county. Wherefore, venue is proper in this Court.

5.   To the extent required, Plaintiff has exhausted her administrative remedies as to the above-listed claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about September 6, 2019. Plaintiff also filed an Employment Discrimination Complaint with the Oklahoma Office of Civil Rights Enforcement on or about September 6, 2019. Plaintiff subsequently received a Dismissal and Notice of Rights letter from the EEOC dated on or about January 30, 2020, which Plaintiff received by mail thereafter. This case is timely filed within ninety (90) days of Plaintiff's receipt of her right to sue letter.

## STATEMENT OF FACTS

6.   Defendant is an entity that contracts with employers to provide managed care services specific to workers' compensation claims.

7.   Plaintiff, who was born November 1948 (making her over age forty at all relevant times), was employed with Defendant for nearly eleven (11) years.

8.   Plaintiff was hired as an RN Case Manager on or about May 12, 2008, and continued in this position until on or about March 13, 2019.

9.   Throughout her lengthy tenure, Plaintiff was an excellent employee.

10.   Plaintiff was highly regarded by her peers. She also received positive performance evaluations, as well as merit pay increases.

11.   Despite her good performance, Plaintiff was terminated from her employment on about March 13, 2019 (at age 70).

-2-

12.    Plaintiff was called to a meeting with her immediate supervisor, RN Case Manager Chad Summer, Human Resources Director Sheri Bedford, and Executive Director Pam LeGrand (all of whom are significantly younger than Plaintiff).

13.    During the meeting, LeGrand claimed the reason for termination was that "no employers" wanted Plaintiff working on their files. However, the claimed basis for termination is pretext.

14.    It is not true that no employers wanted Plaintiff working on their files. At no time was Plaintiff previously told this. She had a good rapport with the employer-clients she served. And, the allegation is inconsistent with prior evaluations of Plaintiff's performance.

15.    Significantly, Plaintiff's termination came on the heels of LeGrand pressing Plaintiff and other older, female RN Case Managers, including Brenda Knoy and Ann Acosta (in her 60s), about when they were going to retire.

16.    More specifically, in or around late-Summer/early-Fall 2018, LeGrand approached Plaintiff in the kitchen/break-room area alone and asked when Plaintiff was "going to retire."

17.    At or around the same time, LeGrand also questioned Ms. Acosta and Ms. Knoy about when they were going to retire.

18.    Plaintiff did not give way to the pressure from LeGrand to leave. However, Ms. Acosta and Ms. Knoy both resigned from their employment within a few months after LeGrand began pressing them about retirement.

19.    LeGrand then hired Kenneth McGehee, a male in his 50s, to take the place of Ms. Acosta and Ms. Knoy. And, Plaintiff began being subject to constant unjustified nitpicking after she was pressed about retirement.

-3-

20.     By way of example, Summer (who reported to LeGrand) sent Plaintiff an email one day, scheduling a meeting between him, Plaintiff and LeGrand to discuss Plaintiff's files.

21.     Plaintiff was led to believe the meeting was of a critical nature, as LeGrand was to attend and Plaintiff was inundated with repeated, pop-up notifications, reminding her of the meeting that day.

22.     Upon arriving for the meeting, only Summer was present. Summer said the reason for the meeting was he allegedly believed Plaintiff had made an error on one of her files. However, when Plaintiff explained that she had not, Summer admitted he knew prior to the meeting that Plaintiff had not made an error, yet he proceeded with the meeting anyway.

23.     Additionally, in or around October and November 2018, LeGrand began chastising Plaintiff about her requests for leave.

24.     By way of example, in or around October 2018, Plaintiff asked to use two (2) hours of accrued leave at the end of the day to apply for Medicare. However, LeGrand denied Plaintiff's request, stating that she (LeGrand) "is trying to run a company," that Plaintiff would have to reschedule her appointment.

25.     Thereafter, on or about November 8, 2018, Plaintiff asked to leave work a few hours early due to illness. Plaintiff told LeGrand she was experiencing severe digestive issues, that the night before she felt it might be necessary to call an ambulance, and that she needed medical treatment. However, LeGrand acted as though the request was a burden, callously responding, "do you want to get paid?" By comparison, LeGrand did not treat the younger and/or male employees in this fashion.

26.     Days later, on or about November 12, 2018, Plaintiff again asked if she could leave

-4-

for a brief period due to illness. Plaintiff explained she had been diagnosed with a digestive condition and prescribed antibiotics, which were causing her to feel sick.

27.    Plaintiff told LeGrand that she needed to return to the doctor to have her medication adjusted. However, rather than simply granting the request, LeGrand asked if Plaintiff "thought it was really necessary."

28.    As a result of her digestive condition, Plaintiff is/was a qualified individual with a disability, in that, she suffered from a condition that substantially impaired her ability to perform one or more major life activities, including, but not limited to her ability to eat and digest.

29.    Plaintiff's condition also impaired one or more of her internal bodily process, including but not limited to her digestive system. Plaintiff also had a record of such impairment and/or was regarded as having such an impairment. At all relevant times, though, Plaintiff was able to perform the essential functions of her job.

30.    Plaintiff also suffers/suffered from a hearing impairment, which constitutes a disability, in that, her hearing impairment substantially limited her ability to perform one or more major life activities, including *inter alia* her ability to hear. Moreover, her condition also impaired one or more of her internal bodily processes, including but not limited to her auditory system. And, she had a record of such an impairment and/or was regarded as having such an impairment.

31.    As a result of her hearing impairment, Plaintiff asked Summer that she not be required to access the voice recordings on his phone, as she could not hear the same. However, Summer continued to require her to access the voice recordings on his phone.

32.    Thereafter, on or about November 13, 2018 – on the heels of Plaintiff requesting leave time – Summers gave Plaintiff a "Final Written Warning" signed by LeGrand, accusing

-5-

Plaintiff of not performing certain tasks. However, the claimed basis for the write-up was pretext.

33.      The allegations in the write-up were untrue. Plaintiff did not do anything wrong; she completed the tasks she was required to perform. And, Defendant had a progressive disciplinary policy that was not followed prior to issuing Plaintiff a "Final Written Warning."

34.      The "Final Written Warning" was the first and only discipline Plaintiff ever received.

35.      Thereafter, in or around late-2018, Plaintiff complained to Bedford that she was being treated unfairly and issued a write-up (by her significantly younger, male supervisor) without justification. However, Bedford failed to take any remedial action.

36.      After her complaint, Plaintiff continued to be treated less favorably than her younger and/or male co-workers.

37.      In or around February 2019, LeGrand unjustly scolded Plaintiff for allegedly being rude to a construction worker on the premises. However, Plaintiff was not rude. The construction worker informed Plaintiff that she should not come through a construction area. However, Plaintiff had to because the door that would have allowed her to avoid the construction area was locked. Plaintiff apologized to the construction worker and explained the circumstances.

38.      Additionally, in or around March 2018, LeGrand told younger and/or male staff members they could mark and take home furniture, pictures and other items that were being gotten rid of. Yet, she did not similarly offer this to Plaintiff.

39.      Further, on or about March 1, 2019, Plaintiff learned Defendant posted a position opening for an RN Case Manager (Plaintiff's position) on Indeed. And, just two (2) weeks later, on or about March 13, 2019, Plaintiff was terminated.

40.      As a direct and proximate result of the Defendant's actions, Plaintiff has suffered

injuries described hereafter.

## COUNT I: Age Discrimination and Retaliation

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

41.     The matters alleged above constitute violations of the ADEA and ODEA in the form of age discrimination and retaliation

42.     Plaintiff is entitled to relief because, at all times relevant to this action, she was over the age of forty (40), was qualified for her job, was discharged and her job was not eliminated after her termination.

43.     Plaintiff is also entitled to relief because she engaged in protected opposition to age discrimination; she suffered adverse actions subsequent to the protected activity; and a causal link exists between the protected activity and the adverse actions.

44.     As damages, Plaintiff has suffered lost earnings and benefits, past and future, and other equitable and compensatory damages allowed by federal and state law. Plaintiff is also entitled to liquidated damages under the ODEA and ADEA based on the willfulness of the violation.

## COUNT II: Disability Discrimination and Retaliation

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

45.     The matters alleged above constitute discrimination based on a disability, a record of a disability and/or being perceived as disabled and retaliation for having requested reasonable accommodations in violation of the ODEA, ADA and ADAAA.

46.     More specifically, Plaintiff was a qualified individual with a disability, in that, she

-7-

suffers from physical impairments, described above, which substantially limit her ability to perform one or more major life activities as set forth above. Said conditions also impact one or more of Plaintiff's internal bodily processes as shown herein. And, Plaintiff had a record of a disability and was regarded as disabled because she had an actual or perceived impairment; that impairment was neither transitory nor minor; and Defendant was aware of and perceived the impairment at the time Plaintiff was terminated.

47.     Despite said impairments, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

48.     Defendant failed to engage in any interactive process with Plaintiff regarding providing Plaintiff with reasonable accommodations. And, Plaintiff was terminated under circumstances giving rise to an inference of discrimination.

49.     Plaintiff is also entitled to relief because she engaged in protected activity (requesting reasonable accommodations in the form of *inter alia* time off and voice recordings not being left on her phone), she suffered adverse actions thereafter, and a causal connection exists between her requests and the adverse actions.

50.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages as allowed by allowed by federal and state law. Plaintiff is also entitled to liquidated damages under the ODEA.

51.     Moreover, because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### COUNT III: Gender Discrimination and Retaliation

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges

and states as follows.

52.     The matters alleged above constitute violations of Title VII and the ODEA in the form of gender discrimination and retaliation.

53.     Plaintiff is entitled to relief because Plaintiff is female; she was qualified for her job; she was terminated; and her job was not eliminated.

54.     Plaintiff is also entitled to relief because she engaged in protected opposition to gender discrimination; she suffered adverse actions subsequent to the protected activity; and a causal link exists between the protected activity and the adverse actions.

55.     As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages as allowed by allowed by federal and state law. Plaintiff is also entitled to liquidated damages under the ODEA.

56.     Moreover, because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests this Court enter judgment in favor of Plaintiff and against Defendant and assess compensatory damages including but not limited to backpay, future wages and other compensatory damages, together with pre- and post-judgment interest, costs, attorney's fees, liquidated damages, punitive damages and such other relief as this Court may deem equitable and appropriate or allowed by law.

RESPECTFULLY SUBMITTED THIS $8$ DAY OF APRIL, 2020.

S/ Jana B. Leonard
LEONARD & ASSOCIATES, P.L.L.C.
JANA B. LEONARD, OBA # 17844
SHANNON HAUPT, OBA #18922
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800          TELEPHONE
(405) 239-3801          FACSIMILE
leonardjb@leonardlaw.net
haupts@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED